```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
FATEMA ISLAM, Individually and on behalf of                 :   **MEMORANDUM**
a class,                                                    :   **DECISION AND ORDER**
                                                            :
                              Plaintiff,                    :   17-cv-4228 (BMC)
                                                            :
            - against -                                     :
                                                            :
AMERICAN RECOVERY SERVICE                                   :
  INCORPORATED,                                             :
                                                            :
                              Defendant.                    :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

The Second Circuit's decision in Avila v. Riexinger & Associates, 817 F.3d 72 (2d Cir. 2016), has led to a number of lawsuits in this district challenging the adequacy of disclosures concerning the accrual, or non-accrual, of post-default charges under the Fair Debt Collection Practices Act. Avila's narrow holding is this: if post-default interest or fees are accruing, it is not sufficient for the collection letter to list the "current amount" of the debt. The collection letter has to say that the amount may increase over time.

The complaint before me seeks to extend Avila to cases where post-default charges are not accruing, but where the collection letter, by referencing the amount due "as of the date of this letter," arguably implies that they are. Although the facts of Avila are thus distinguishable, its analytical framework is so indulgent of plaintiffs and their attorneys that I am constrained to deny defendant's motion for summary judgment and to grant plaintiff's motion.

**BACKGROUND**

The material facts are undisputed.

On August 4, 2016, Bank of America, N.A., placed plaintiff's credit-card account with defendant for collection. One week later, on August 11, 2016, defendant sent plaintiff a collection letter which stated, in part, that "*[a]s of the date above*, you owe $14413.78." (Emphasis added). The letter then set forth a table identifying Bank of America as the "original creditor"; the "total amount of the debt due as of charge-off" as $14,413.78; the "total amount of interest accrued since charge off" as $0; and the "total amount of non-interest charges or fees accrued since charge-off" as $0. After this table, the letter again advised that "[t]he balance owed above reflects the total balance due *as of the date of this letter*. The itemization reflects the post charge-off activity we received from Bank of America." (Emphasis added).

Defendant sent a second collection letter on September 23, 2016, which did not contain the language "as of the date of this letter." It simply listed the "Balance Owed" as $14,413.78, the same amount demanded in the first letter.[1]

Bank of America has a policy of not accruing interest or fees once it has charged off a bad debt. Thus, consistent with the letter's terms, no interest or expenses accrued after August 4, 2016, the date on which the account was put out for collection to defendant.

Based solely on the language in the August 11th letter, plaintiff contends that defendant violated the FDCPA in three respects: (1) by violating the general prohibition against "deceptive [or] misleading" representations in 15 U.S.C. § 1692e; (2) by violating the specific prohibition against "[t]he use of any false representation or deceptive means . . . to attempt to collect any

---

[1] Defendant claims that it sent four more letters to plaintiff, one before the August 11th letter and three after the September 23rd letter, but plaintiff denies receiving them. As explained below, because plaintiff's claim is based only on the August 11th letter, any other letters are immaterial to whether the August 11th letter was misleading.

debt" in § 1692e(10); and (3) by violating § 1692g, which requires that a collection letter state the "amount of the debt."

## DISCUSSION

In Avila, the collection letter noted in two places the "current balance" of the debt, but did not disclose that after the date of the collection letter, the account was continuing to accrue interest at the alleged rate of 500% per year plus late fees. The Second Circuit held that referring to the "current balance" was not sufficient to disclose that the amount would increase after the date of the letter, and thus was a "deceptive [or] misleading representation" of the amount due under the general prohibition of 15 U.S.C. § 1692e. Its decision was premised on two principles: (1) the FDCPA should be liberally construed because it is a consumer-protection statute, see Vincent v. The Money Store, 736 F.3d 88, 98 (2d Cir. 2013); Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 95 (2d Cir. 2008); and (2) the collection letter must be assessed from the perspective of the "least sophisticated consumer." See Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993). Applying these principles, the Court held that

> A reasonable consumer could read the notice and be misled into believing that she could pay her debt in full by paying the amount listed on the notice. In fact, however, if interest is accruing daily, or if there are undisclosed late fees, a consumer who pays the "current balance" stated on the notice will not know whether the debt has been paid in full.

Avila, 817 F.3d at 76. Based on the procedure set forth in Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C., 214 F.3d 872 (7th Cir. 2000), the Second Circuit adopted a "safe harbor" option for debt collectors seeking to recover debts where the amount varies from day to day, under which a debt collector can advise the debtor either that the "current balance" may increase over time, or that the debt collector will accept the current balance as payment in full.

3

I must of course apply Avila as controlling precedent, and although it is factually distinguishable, its analytical framework dictates the result here. Specifically, it applied the "liberal construction" and "least-sophisticated consumer" principles so broadly, to such a harmless, technical violation, that it effectively exchanged the words "deceptive" and "misleading" in the statute for "ambiguous." If a collection letter is ambiguous as to interest, Avila holds, then it violates §1692e.

I recognize that ambiguity can be indicative of a misleading or deceptive communication. See Easterling v. Collecto, Inc., 692 F.3d 229, 233 (2d Cir. 2012). But Avila compels the conclusion that any ambiguity as to post-dated accruals in a collection notice gives rise to a claim under the general prohibition of § 1692e – even if the ambiguity does no harm or even inures to the benefit of the debtor. And by doing this, it departs from one of the most basic principles of the fraud and misrepresentation torts from which it is derived, namely, materiality.

Let's say Avila (as the personification of the least-sophisticated consumer), upon receiving the collection letter, wanted to pay her $1845.31 debt – the amount listed on her "current balance." Let's also assume, as the Second Circuit held, that the word "current" was not sufficient to alert Avila that the balance might increase over time, indeed, at the whopping rate of 500%. According to the Second Circuit, Avila was "misled" into thinking that by paying the $1845.31, she would extinguish the debt. Had Avila known that there would be an additional amount due – 500% interest per annum accruing between the date of the collection and the date the debt collector received his payment, she would have . . . what? Not paid the debt? I do not see how a debtor wanting a clean slate could say to herself, "I would have paid this if it extinguished the debt, but had I known that it was accruing 500% interest, I would have let it ride and continue to accrue interest."

4

Significantly, the Avila decision, in creating its safe-harbor provision, does not require the debt collector to disclose the *amount* of continually accruing interest and fees. Recognizing that this would be a moving target as interest accrues at specified intervals and amounts, the Second Circuit's safe harbor only requires the collection company to say that there "may be" such fees. This is so even though several cases have found FDCPA violations where the collection company attempted – inadequately, in these courts' views – to advise the debtor about continuing accruals. See Kolganov v. Phillips & Cohen Assocs., No. 02-CV-3710, 2004 WL 958028, at *3 (E.D.N.Y. Apr. 8, 2004); McDowall v. Leschack & Grodensky, P.C., 279 F. Supp. 2d 197, 199 (S.D.N.Y. 2003)).

Yet the one thing that even the least-sophisticated consumer understands is that under ordinary circumstances, if you don't pay your credit-card debt, it gets bigger. "[E]ven the most unsophisticated consumer would understand that credit card debt accrues interest." Weiss v. Zwicker & Assocs., 664 F. Supp. 2d 214, 217 (E.D.N.Y. 2009). And if the words "current amount" are not sufficient to disclose to Avila that the ordinary rules apply, then additional language that the amount "may increase" seems unlikely to either.

Because the least-sophisticated consumer test is objective, there is no need for any particular plaintiff to prove that she specifically relied on the misrepresentation. Easterling v. Collecto, Inc., 692 F.3d 229, 234 (2d Cir. 2012). However, if it seems beyond question that no one would be deceived into taking or refraining from taking action by an alleged misrepresentation, there does not seem any purpose in providing a damage remedy under the FDCPA. If we're trying to protect Avila, then to the extent she is encouraged to take steps to pay off the principal and accrued interest, the ambiguity of "current balance," if there is one, has worked in her favor. She is obviously a lot better off having paid the $1845.31 listed on the

5

notice, whether or not she thinks that she has paid off the debt entirely. When she receives next month's collection letter, it will show that, notwithstanding her payment, she now only owes $780.83. That's much better for her than the $2626.14 she would have owed had she never received the collection letter or paid at all.

The multitude of cases on post-judgment interest filed in this district since <u>Avila</u> suggest that the real beneficiaries here are plaintiffs' attorneys who recover a fee for going over collection letters with a fine-toothed comb to snag some technical argument about how the letter could have more clearly stated the interest component. See <u>Ghulyani v. Stephens & Michaels Assocs.</u>, No. 15-CV-5191, 2015 WL 6503849, at *3 (S.D.N.Y. Oct. 26, 2015) (on similar facts, noting that "the interpretation espoused by Ghulyani is indeed idiosyncratic – much more likely to be arrived at by an enterprising plaintiff's lawyer than by a least sophisticated consumer."). The instant case, together with many of the FDCPA cases on my docket, suggests that the FDCPA is being privately enforced mostly on the hyper-technical margins of permissible collection activity. We have drifted quite far from the truly awful collection practices – threatening violence, disclosing a consumer's personal affairs to others, impersonating public officials – that prompted Congress to enact the FDCPA. See S. Rep. 95-382, at 2 (1977). We are no longer deterring collection companies from abusing, tricking, and misleading debtors into making payments that they do not have to or would not want to make if they had the relevant facts. The courts are to some extent simply burdening the collection industry with a continuing portfolio of litigation that potentially raises the cost of credit for all consumers.

Although the statute presumes the least-sophisticated consumer, there is no reason to view the least-sophisticated consumer as cognitively impaired. See <u>Ellis v. Solomon & Solomon, P.C.</u>, 591 F.3d 130, 135 (2d Cir. 2010) (quoting <u>Russell v. Equifax A.R.S.</u>, 74 F.3d 30,

34 (2d Cir. 1996)) ("The hypothetical least sophisticated consumer does not have 'the astuteness of a Philadelphia lawyer or even the sophistication of the average, everyday, common consumer,' but is neither irrational nor a dolt."). We do not give the least-sophisticated consumer much "credit." Perhaps we should give her more.

Despite my misgivings about Avila, however, the decision leaves me with a clear direction as to the outcome of the instant case. Indeed, this case fits the framework of Avila better than Avila itself. If we assume that the least-sophisticated consumer (1) is not irrational, see id.; (2) has more than one debt; and (3) does not have sufficient funds to pay all her debts in full, then she is going to have to decide which debts to pay and when to pay them. The language in the collection letter "as of the date of this letter" suggests that the debt is in a dynamic state – "as of the date" suggests that on a different date, the amount of the debt may be different – and, of course, anyone would understand that it won't get any smaller without payment. But the undisputed fact is that, contrary to this suggestion, the amount of this debt will never be different, never get greater. The debtor has therefore been subtly incentivized to pay now to avoid paying more later, when, in fact, there never would be "more later." Defendant receives money that it might not have received but for the language "as of the date of this letter." The debtor has thus been misled or deceived.

This inducement could be material if it led a debtor to pay the debt that she is led to believe is accruing interest, but actually is not, in lieu of another debt that she knows is accruing interest at some lower rate. (In the instant case, it was obviously not material, because plaintiff was not induced to pay – that's why defendant sent at least one further demand letter.) But whether or not a plaintiff has actually relied on the debt collector's statement, Avila, on less compelling facts, admits no room for materiality. If "current balance" is insufficient disclosure

7

to Avila that her balance was dynamic, where there could be no harm, then, in the instant case, "as of the date of this letter" has to be insufficient disclosure that plaintiff's balance was static, where there could theoretically be harm, even if it didn't occur here.[2]

Besides its argument concerning materiality, defendant's other arguments are not persuasive. Defendant points out that the letter plaintiff acknowledges receiving on September 23rd, as well as the other letters defendant sent before and after the August 11th letter that she does not acknowledge receiving, did not use "as of the date" language, nor did the September 23rd letter show any additional charges beyond the "amount due" in the August 11th letter. From this, defendant argues that plaintiff would have known that no post-charge-off charges were accruing. However, while subsequent clarifying letters might have eliminated the least-sophisticated consumer's confusion, they do not absolve defendant from having violated the statute with the August 11th letter. At most, the subsequent letters, including the letter dated September 23rd that plaintiff acknowledges receiving, might limit her damages.

But beyond that, defendant incorrectly assumes that the subsequent letter or letters actually removed the possibility that the account would incur subsequent charges. Not necessarily. They simply stated that, as of their respective dates, such charges had not been imposed. They did not constitute a binding commitment not to impose such charges in the future. Defendant would require the least-sophisticated consumer to compare the letters side-by-side and arrive at a judgment that no more charges may be assessed. However, Avila's least-sophisticated consumer could still think, based on the August 11th letter, that additional charges could be assessed at any time if she did not pay.

---

[2] There is one distinction between this case and Avila. The Second Circuit's decision was premised, in part, on § 1692g, based on its holding that the disclosure of the amount of the "debt" must include accrued interest and charges, not just principal. Section 1992g does not apply in the instant case because the static balance was accurately stated.

8

Defendant's related argument is that by listing the amount of "$0" for "total amount of interest accrued since charge-off" and the "total amount of non-interest charges or fees accrued since charge-off," the least-sophisticated consumer would understand that she has no exposure for any future charges. This argument would require the least-sophisticated consumer to (1) understand what a "charge-off" is; and (2) deduce that because the post charge-off amount did not include interest or expenses, it could never be increased to add such expenses. I think the argument simply presumes a level of sophistication inconsistent with that posited by Avila. The Second Circuit's reasoning is that collection companies may not assume that consumers may deduce or infer their actual exposure. It has to be spelled out for them.

Defendant also points to two district court cases, one before Avila and one after, that found nothing misleading about similar language. See Feldheim v. Fin. Recovery Servs., Inc., 2017 WL 2821550, at *6 (S.D.N.Y. June 28, 2017); Ghulyani, 2015 WL 6503849, at *3. The language is indeed similar to the case before me. However, Feldheim was not a reasoned decision; it addressed a multitude of issues, and on the issue relevant here, it simply quoted Ghuylani and stated the same conclusion as an *ipse dixit*.

Ghuylani was decided before Avila, and condemned the plaintiff's theory as a "bizarre and idiosyncratic interpretation" that was "much more likely to be arrived at by an enterprising plaintiff's lawyer than by a least sophisticated consumer." Id. I might well agree. But I cannot see plaintiff's theory here (or in Ghuylani) as any more "bizarre and idiosyncratic" than the theory in Avila.

Perhaps the Second Circuit will find some means to limit Avila in the future. For the present, I see no alternative but to apply its holding in plaintiff's favor.

## CONCLUSION

Plaintiff's motion for summary judgment as to liability is granted, and defendant's motion is denied.  By separate order, the Court will schedule a conference to discuss resolution of the class certification and damages claims in the case.

**SO ORDERED.**

						_____
												U.S.D.J.

Dated:	Brooklyn, New York
			October 30, 2017